IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

**GUIDEONE MUTUAL INSURANCE COMPANY,**

    Plaintiff,

v.

**TIMOTHY J. DANIEL, II, HEATHER DANIEL, and JODI E. DARSEY**,

    Defendants.

Civil Action No. 7:13-CV-126 (HL)

## ORDER

While in transit to a family Christmas gathering on Christmas Eve 2009, Jodi E. Darsey collided with a vehicle driven by Timothy J. Daniel, II, and in which Heather Daniel was a passenger. This case arises from that unfortunate accident and the tragic injuries sustained by Mr. Daniel. Ms. Darsey's vehicle was titled in her name, and she maintained a private automobile insurance policy. However, the Daniels contend that as an ongoing volunteer with the First Baptist Church of Hazelhurst, at the time of the accident Ms. Darsey had additional liability coverage under the church's Business Auto Policy issued by GuideOne Mutual Insurance Company ("GuideOne").

Presently before the Court is Plaintiff GuideOne's Motion for Summary Judgment and Motion to Exclude Expert Testimony from Consideration. (Doc. 25). After reviewing the pleadings, briefs, depositions, and other evidentiary

materials presented, and determining that there is no genuine dispute of the material facts, the Court finds that Plaintiff is entitled to judgment as a matter of law and grants Plaintiff's motion for summary judgment. The Court further finds that the expert testimony proffered by Defendants is not helpful to the Court's interpretation of the contract language at issue and grants Plaintiff's motion to exclude the testimony of Defendants' expert witness.

## I.   FACTUAL BACKGROUND

On December 24, 2009, Defendant Jodi Darsey ("Darsey") departed from her mother's home in Cairo, Georgia in her personal vehicle and began traveling toward her in-laws' home in Hazelhurst, Georgia. (PSOMF, ¶ 4; Doc. 7, ¶ 13; Doc. 25-4, p. 14).[1] While in route, Darsey was involved in a motor vehicle accident with Defendants Timothy Daniel and Heather Daniel ("the Daniels") at an intersection in Jeff Davis County. (Id.; Doc. 7-2, ¶ 7). Mr. Daniel sustained significant personal injuries as a result of the collision, including permanent total paralysis from the navel down; severe scalp lacerations; a concussion; six broken ribs; right collarbone fracture; right scapula fracture; fractured pelvis; lacerated spleen and liver; and pleural effusion. (Doc. 7, ¶ 14; Doc. 7-2, ¶ 11).

---

[1] "PSOMF" refers to Plaintiffs' Statement of Material Facts. "DSOMF" refers to Defendant's Statement of Material Facts. The cited paragraphs are those admitted by each party.

The Daniels initiated a personal injury lawsuit against Darsey on November 11, 2011 in the Superior Court of Morgan County, Civil Action Number 2011CA476, alleging that Darsey's negligent operation of her vehicle proximately caused the Daniels' injuries. (Doc. 7-2, ¶ 17). The Daniels also named as a defendant in the underlying litigation the First Baptist Church of Hazelhurst, Inc. ("the Church"), alleging that at the time of the accident Darsey was an agent and/or employee of the Church and that she was acting within the scope of that agency and/or employment when the collision occurred. (Doc. 7-2, ¶¶ 5-6). On November 26, 2012, the Daniels delivered a written demand to Plaintiff GuideOne Mutual Insurance Company ("GuideOne") for liability coverage under the Business Auto Policy, GL 3748-327, ("the Policy") issued to the Church based the revised theory that Darsey qualified as an insured because she performed volunteer services for the Church. (PSOMF, ¶¶ 1, 7; Doc. 25-6). GuideOne denied coverage under the Policy and later filed the present action for declaratory judgment seeking a determination from the Court that under the terms of the Policy the insurance company owes no duty to indemnify Darsey for any judgment rendered against her in the underlying litigation. (PSOMF, ¶ 8 ; Doc. 7, ¶ 22).

The Policy in question contains the following general insuring agreement:

SECTION II – LIABILITY COVERAGE

A.    Coverage

We will pay all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered 'auto'.

. . .

**1.    Who Is An Insured**

The following are 'insureds':

a.    You for any covered 'auto.'[2]

b.    Anyone else while using with your permission a covered 'auto' you own, hire or borrow except:

(1) The owner or anyone else from whom you hire or borrow a covered 'auto.' This exception does not apply if the covered 'auto' is a trailer connected to a covered 'auto' you own.

(2) Your 'employee' if the covered 'auto' is owned by that 'employee' or a member of his or her household.

(3) Someone using a covered 'auto' while he or she is working in a business of selling, servicing , repairing, or parking or storing 'autos' unless that business is yours.

---

[2] The Policy defines "you" as the Named Insured in the Declarations, which is the Church.

4

>> (4) Anyone other than your 'employees', partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their 'employees', while moving property to or from a covered 'auto'.
>>
>> (5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered 'auto' owned by him or her or a member of his or her household.
>
> c. Anyone liable for the conduct of an 'insured' described above but only to the extent of that liability.

(PSOMF, ¶ 2).

At this point, it is undisputed that Darsey was not an employee of the Church; accordingly, she is not covered as an "insured" under the Policy's general terms. (PSOMF, ¶ 5). However, the Policy also includes an endorsement provision entitled "Institutions – Other than Social Service Agencies – Volunteers as Insureds" ("Volunteer Endorsement"), which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

> BUSINESS AUTO COVERAGE FORM

The following is added to the LIABILITY COVERAGE WHO IS AN INSURED provision:

Anyone volunteering services to you is an 'insured' while using a covered 'auto' you do not own, lease, hire, rent or borrow in your business. Anyone else who furnishes that 'auto' is also an 'insured.'

(PSOMF, ¶ 3; DSOMF, ¶ 9).

The link between Darsey and the Church arises from her marriage to the then-pastor of the Church and her involvement as the Church's volunteer nursery coordinator.[3] (DSOMF ¶ 2; Doc. 25-4, p. 28). While it undisputed that Darsey was neither traveling to or from the Church nor performing any service on behalf of the Church when the accident transpired, the question now before the Court is whether Darsey's status as a Church volunteer qualifies her as an "insured" under the terms of the Volunteer Endorsement. (PSOMF, ¶ 6).

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

When considering a motion for summary judgment, the court must evaluate all of the evidence, together with any logical inferences, in the light most

---

[3] Throughout the briefing of this motion, Defendants also describe Darsey as a registered nurse. Nothing in the record suggests that Darsey's medical certification is somehow connected to any role she served at the Church and, accordingly, her medical background bears no relevance.

6

favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). In sum, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### III. ANALYSIS

The parties concur that that the material facts underlying this case are not in dispute. The only issue before the Court, therefore, is whether the phrase

"volunteering services" in the Volunteer Endorsement should be interpreted to provide coverage for Darsey, who while a regular volunteer at the Church was not actively serving in a volunteer role at the time of the accident with Defendants. Applying the tenants of contract construction, the Court finds that the unambiguous terminology of the Volunteer Endorsement does not afford coverage for Darsey.

### A.   Motion to Exclude Expert Testimony

Before the Court can address Plaintiff's motion for summary judgment, the Court first must decide whether the testimony of Defendants' expert Louis G. Fey, Jr. should be excluded from consideration. Plaintiff argues that even though Fey carefully states that he is not attempting to reach a legal conclusion, ultimately, his opinion does just that, articulating how the Volunteer Endorsement should be interpreted and specifically opining that the Endorsement affords coverage for the underlying claim. According to Plaintiff, at its heart, Fey's opinion is nothing more than a statement that the language of the Volunteer Endorsement is ambiguous, which is a matter of law for the Court to decide.

Federal Rule of Evidence 702 governs the admissibility of expert testimony, providing that

> a witness qualified as an expert by knowledge, skill, experience, training, or education may testify . . . in the form of an opinion . . ., if (1) the testimony is based upon sufficient facts or date, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed.R.Evid. 702. In applying this rule, the trial court serves as the gatekeeper and may admit expert testimony only where is it both relevant and reliable. See Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 152 (1999); Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 589 (1993). "District Courts are charged with this gatekeeping function 'to ensure that speculative, unreliable expert testimony does not reach the jury' under the mantle of reliability that accompanies the appellation 'expert testimony.'" Rink v. Cheminova, Inc., 400 F.3d 1286, 1291 (11th Cir. 2005) (quoting McCorvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002)). The party relying on the expert bears the burden of showing by a preponderance of the evidence that the expert's testimony is admissible. Corvey v. Baxter Healthcare Corp., 298 F.3d 1253, 1256 (11th Cir. 2002) (quoting Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999)).

Proffered testimony also must be relevant and assist the trier of fact. United States v. Frazier, 387 F.3d 1244, 1262 (11th Cir. 2004). "By this requirement, expert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person." Id. (citing United States v. Rouco,

9

765 F.2d 983, 995 (11th Cir. 1985) (holding that expert testimony is admissible only where it offers something "beyond the understanding and experience of the average citizen")). Stated another way, "[p]roffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments." Id.

Here, there is no dispute about Fey's overall qualification to testify as an expert on the insurance industry's standard for interpreting policy provisions. The parties also do not disagree about Fey's competency to explain the insurance underwriting process and the differences between the manuscript form created by GuideOne for the Volunteer Endorsement in question in this case and the standard industry language that appears in forms developed by the Insurance Service Office ("ISO"). Those portions of Fey's testimony thus are admissible under Rule 702. However, Fey's opinion regarding why GuideOne employed a specific form amounts to pure speculation and shall not be considered for the purpose of ruling on the pending motion. Nor shall the Court consider Fey's opinion that the Volunteer Endorsement provides coverage under the facts of this case. Regardless of Fey's proclamation that he is not attempting to reach a legal conclusion, his endeavors to define the possible meaning of "volunteering services" as it appears in the Endorsement end in an opinion that the policy language is ambiguous and should be interpreted to provide coverage. Fey's

opinion thus usurps the Court's role as the trier of fact to determine the existence of an ambiguity. The Court further finds that the meaning of "volunteering services" is not beyond the scope of understanding of the average person; thus, an expert's opinion is neither warranted nor helpful.

### B.   Volunteer Endorsement

The contract language here in dispute reads in pertinent part:

> Anyone volunteering services to you is an 'insured' while using a covered 'auto' you do not own, lease, hire, rent or borrow in your business. Anyone else who furnishes that 'auto' is also an 'insured.'

(Doc. 7-1, p. 38). Specifically, the parties disagree about the meaning of "volunteering services." Defendants contend that in the absence of some durational limitation constricting coverage only to those volunteers actively performing some volunteer activity on behalf of the Church, the phrase is rendered ambiguous and subject to multiple interpretations. Defendants therefore aver that, construing the ambiguity in favor of the insured, the policy affords coverage not only for those persons presently engaged in volunteer activities but also for anyone who identifies as a volunteer for the Church, whether that person is acting on behalf of the Church or on a personal mission. Plaintiff disputes Defendants' interpretation, arguing instead that the language is unambiguous and subject to one reasonable interpretation, which is that the Volunteer Endorsement is intended to extend the scope of the Policy to cover only those

11

volunteers acting on the Church's behalf. According to Plaintiff, to conclude otherwise effectively would transform the Church's Policy into a personal liability policy for any person who ever volunteered for the Church.

Generally, "[a] federal court sitting in diversity will apply the conflict-of-laws rules of the forum state." Grupo Televisa, S.A. v. Telemundo Commc'ns Group, Inc., 485 F.3d 1233, 1240 (11th Cir. 2007). In a diversity case involving the interpretation of an insurance contract, "the Court is bound by the applicable state law governing the contract." Giddens v. Equitable Life Assurance Soc'y of U.S., 445 F.3d 1286, 1297 n.9 (11th Cir. 2006). The parties in this case agree that Georgia law applies.

Under Georgia law, construction of an insurance contract presents a question of law for the Court. O.C.G.A. § 13-2-1. When interpreting the terms and conditions of the policy, the Court must abide by "the rules of construction applicable to other contracts, and words in the policy must be given their usual and common signification and customary meaning." Collier v. State Farm Mutl. Auto. Ins. Co., 249 Ga. App. 865, 866 (2001). The "cardinal rule of construction is to ascertain the intention of the parties." O.C.G.A. § 13-2-3. "Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the contract alone to ascertain the parties' intent."

Fireman's Fund Ins. Co. v. Univ. of Ga. Athletic Assn., 288 Ga. App. 355, 356-57 (2007).

Ambiguity is "'duplicity, indistinctness, an uncertainty of meaning or expression.'" Major v. Allstate Ins. Co., 207 Ga. App. 805, 806 (1993) (quoting Tarbutton v. Duggan, 45 Ga. App. 31 (1932)). "An insurance contract will be deemed ambiguous only if its terms are subject to more than one reasonable interpretation. The policy should be read as a layman would read it and not as it might be analyzed by an insurance expert or an attorney." Banks v. Brotherhood Mut. Ins. Co., 301 Ga. App. 101, 103 (2009) (citation and punctuation omitted). The "rule of liberal construction of an insurance policy cannot be used to create an ambiguity where none, in fact, exists." Id.; State Farm Mut. Auto Ins. Co. v. Staton, 286 Ga. 23, 25 (2009) ("[W]hile an ambiguity is to be construed in favor of the insured, this court may not strain the construction of the policy so as to discover an ambiguity.") (quotation and citation omitted). The court "must look to the usual and common meaning of [the] words, and not a meaning based upon some extreme or unusual definition." Major, 207 Ga. App. at 806.

Defendants attempt to create an ambiguity where none exists. Looking at the Policy as a whole, it is clear that the language "volunteering services" is meant to afford liability coverage for those persons involved in a qualifying accident while actively serving the Church in a volunteer capacity. Were the

13

Court to accept Defendants' interpretation, the Volunteer Endorsement would extend automobile liability coverage to any member of the Church who at any given time volunteered in the nursery, sang in the choir, taught Sunday School, or engaged in any other service to the Church under any and all circumstances. Such a result is unreasonable and clearly not the intent of either the insurer or the insured.

In support of their position, Defendants endeavor to draw a distinction between the manuscript form employed by Plaintiff for this Policy and the standard ISO form commonly used in the insurance industry. Defendants point to GuideOne Specialty Mut. Ins. Co. v. Missionary Church of Disciples of Jesus Christ, where the Fifth Circuit was called upon to review a different GuideOne policy containing the standard ISO volunteer endorsement. 687 F.3d 676, 680 (5th Cir. 2012). The policy in that case read, "Any person who is a volunteer, but only while using an "auto" with your express knowledge and authorization, in the course of your business, and within the scope of your duties for you." Id. First of all, the variation in the form itself does not equate to ambiguity. See Great Lakes Reinsurance (UK) PLC v. Vasquez, 341 Fed. App'x 515, 518 (11th Cir. 2009) ("that the style is different – or even awkward – is not to say that the terms are ambiguous"). Second, the plain language of both endorsements renders that

14

same result: coverage for a volunteer acting within the scope of that volunteer's service to the insured.

At the time of the accident in this case, Darsey was traversing from her mother's home to her in-laws' home. (Doc. 25-4, p. 14). She was traveling neither too nor from the Church. (Id., p. 24). She had no intention of even going to the Church that day. (Id., p. 25). Even though Darsey volunteered as the nursery coordinator for the Church, on December 24, 2009, she was engaging in no activity in any way related to her volunteer position, and she had no expectation that she was covered under the Church's Business Auto Policy during her personal holiday travels. (Doc. 25-4, p. 23, 25). Thus, applying the unambiguous terms of the Volunteer Endorsement, the Court finds as a matter of law that the Policy provided no coverage for Darsey at the time the accident occurred.

## IV.   Conclusion

For the reasons discussed herein, the Court finds that the plain and unambiguous terms of the Volunteer Endorsement preclude coverage of Darsey under the Policy. Accordingly, Plaintiff's Motion for Summary Judgment and Motion to Exclude Expert Testimony from Consideration (Doc. 25) is granted.

**SO ORDERED**, this the 4th day of September, 2015.

*s/ Hugh Lawson*_____
**HUGH LAWSON, SENIOR JUDGE**

aks

15